UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK B. PRICE,

                Plaintiff,

       - against -

CUSHMAN & WAKEFIELD, INC., and JOANNE PODELL,

                Defendants.

08 Civ. 8900

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

       In this case, a New York commercial real estate broker is suing his former brokerage firm and his former supervisor at that firm. The plaintiff, Mark Price, alleges that the defendants, Cushman & Wakefield ("Cushman") and Joanne Podell, discriminated against him because of his religious beliefs and practices. Mr. Price claims that the discrimination culminated in defendants' refusal to pay him commissions he was owed and in defendants' termination of his employment. These acts, he claims, violated federal, state, and local anti-discrimination laws and also give rise to separate claims sounding in tort and contract.

       Defendants now move to dismiss a number of plaintiff's claims and to strike his demand for a jury trial. For the reasons that follow, the Court grants in part and denies in part defendants' motion to dismiss. The Court denies defendants' motion to strike the jury demand with leave to renew at the close of discovery.

1

I.      BACKGROUND

Because this is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the allegations of the complaint as true and draws reasonable inferences in plaintiffs' favor.  *E.g.*, *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 124 (2d Cir. 2009).  Still, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

A.      **The Complaint's Allegations**

In January 2003, Cushman hired plaintiff as a broker within its Brokerage Group, which provides commercial real estate brokerage services in the New York metropolitan area.  (Compl. ¶ 29.)  From that point through June 2004, plaintiff worked successfully with several other brokers at Cushman on various real estate transactions.  (*Id.* ¶ 30.)

Under Cushman's compensation scheme as outlined in the plaintiff's contract, a broker receives 50 percent of the gross commission earned on any transaction in which the broker "rendered services," and Cushman retains the remainder.  (*Id.* ¶ 17.)  Where more than one broker works on a deal, the 50 percent broker's fee is divided among the brokers involved.  (*Id.*)  Although the employment contract does not specify how brokers are to divide the 50 percent broker's fee when they work on a transaction together, it does say that the "Employee" promises to "abide by and accept C&W's decision" regarding the proper allocation.  (*Id.* ¶ 18.)  The contract also provides for dispute resolution procedures should the brokers disagree about what the proper allocation should be.  (*Id.* ¶¶ 22–24.)

2

In mid-2004, defendant Podell, who was then Cushman's Senior Director of Retail Services, asked plaintiff to work with her "on an exclusive basis," and plaintiff agreed. (*Id.* ¶ 31.) At that time, plaintiff and Ms. Podell agreed that when they worked together on transactions that Ms. Podell originated, Ms. Podell would receive 80 percent of the broker's fee, and plaintiff would receive the other 20 percent. (*Id.* ¶ 33.) They also agreed that plaintiff would receive 50 percent of the broker's fee for transactions they handled together but that plaintiff originated. (*Id.*)

From mid-2004 until April 26, 2006, plaintiff worked with Ms. Podell, who acted as his supervisor at the firm. (*Id.* ¶32.) After plaintiff began working with Ms. Podell, she told him to work exclusively on transactions she had originated. (*Id.*) On their transactions, Ms. Podell would typically make the initial client contact and plaintiff would do most of the remaining work necessary to close the transaction. (*Id.* ¶ 35.) Between June 2004 and October 2005, the plaintiff and Ms. Podell worked successfully on a number of such transactions. (*Id.* ¶ 36.)

Cushman brokers report the commission fees they are due to Cushman in what is called a "revenue transmittal document." (*Id.* ¶ 80.) In that document, brokers are to record the total commission a transaction garners as well as the share of the broker's fee each broker on the transaction is to receive. (*Id.*) Cushman then knows whom to pay and how much to pay them. Between June 2004 and October 2005, the plaintiff was typically the one to record his transactions with Ms. Podell and the share of the broker's fee he and Ms. Podell were each to receive. (*Id.* ¶ 81.) In the transactions they handled during this period, plaintiff was always paid 20 percent of Ms. Podell's broker fee, consistent with the terms of their commission-splitting agreement. (*Id.* ¶ 36.)

3

In 2005, the plaintiff's situation changed. One of his young children died after a protracted three-year illness. (*Id.* ¶¶ 38, 46.) During the illness, the plaintiff had become increasingly observant of his Jewish faith and had embraced Chabad, a branch of Judaism. (*Id.* ¶ 47.) In 2005, plaintiff began attending synagogue each morning before work. (*Id.* ¶¶ 50–51.) He also began praying at Cushman's offices during work breaks. (*Id.* ¶¶ 52–54.) As a result of these religious practices, the complaint alleges, Ms. Podell began to discriminate against plaintiff at work. She began to interrupt him during his prayers; complained that he had failed to shave, even though he explained to her that his religious beliefs forbade him to shave for one month following his son's death; and repeatedly emailed him with work-related questions on Rosh Hashanah, a religious holiday. (*Id.* ¶¶ 56–61.) She eventually told plaintiff he could not pray at the office and indicated that he could be fired if he continued to do so. (*Id.* ¶¶ 66–68.) Plaintiff complained to other Cushman employees about Ms. Podell's behavior, but he saw no evidence that those employees ever took any action. (*Id.* ¶¶ 69–72.)

Although prior to 2006, the plaintiff had typically been the person to record, in a revenue transmittal document, the transactions he handled with Ms. Podell, in early 2006 Ms. Podell refused to allow him to record three such deals that had recently closed. (*Id.* ¶ 81.) Because she did not record them herself, plaintiff was unable to receive compensation for his work. (*Id.*) In late March or early April 2006, Ms. Podell proposed a new commission-splitting agreement with the plaintiff that would have granted him less favorable terms and that would have been retroactive to the beginning of 2006. (*Id.* ¶ 82.) Ms. Podell's proposal was inconsistent with the earlier agreed-upon arrangement, and the plaintiff rejected it. (*Id.* ¶ 84.) On April 26, 2006, the plaintiff informed

4

Cushman's Managing Director of the New York Area that he would no longer be working with Ms. Podell. (*Id.* ¶ 87.) Soon thereafter, Ms. Podell booked two of the transactions she had previously prevented the plaintiff from booking, and categorized them as entirely her own. (*Id.* ¶ 89–90.)

At about this time, the plaintiff demanded that his employment contract's "Dispute Resolution Procedures" be used to resolve the allocation of commissions between himself and Ms. Podell. (*Id.* ¶ 91.) Those procedures provide for a preliminary dispute resolution process "with the assistance of the appropriate Branch Manager(s) or Regional Director(s)." (*Id.* ¶ 22–23.) If that process fails, and the dispute involves more than $100,000 in gross commissions, the contract provides for the appointment of a panel of three arbitrators to settle the dispute. (*Id.* ¶ 24.) When the plaintiff requested resolution of his dispute with Ms. Podell, Cushman's Regional Director stated that she intended to make a "final" decision on the dispute and that plaintiff would not be able to arbitrate the dispute further. (*Id.* ¶ 92–94.) Two months later, the Regional Director issued a determination that plaintiff should be paid commissions on the relevant transactions at rates ranging from one to five percent per transaction—far lower rates than the deal with Ms. Podell would have given plaintiff. (*Id.* ¶ 99.)

Plaintiff informed Cushman that he did not accept the Regional Director's determination and requested arbitration. (*Id.* ¶ 102.) That request was denied. (*Id.*) He also continued to complain to various Cushman managers about Ms. Podell's discrimination against him, to no avail. (*Id.* ¶ 104–116.) After plaintiff's repeated requests to Cushman management that it take action regarding the alleged discrimination

5

and retaliation plaintiff had experienced on account of his religious beliefs, plaintiff was fired on October 23, 2006.  (*Id.* ¶ 117.)

**B.     Procedural History**

Plaintiff filed suit against defendants on October 16, 2008, alleging that the defendants had violated a number of federal and state statutory provisions.  None of those provisions are at issue here.  Plaintiff also asserted several claims at common law.  Defendants now move to dismiss plaintiff's fifth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action, which in summary alleged that: (1) Cushman and Ms. Podell had violated their implied duties of good faith and fair dealing (*see* Compl. ¶¶ 160–163, 189–192); (2) Cushman and Ms. Podell had been unjustly enriched at plaintiff's expense (*see id.* ¶¶ 171–185, 193–200); (3) Ms. Podell had breached her commission-sharing contract with plaintiff (*see id.* ¶¶ 186-188); and (4) Ms. Podell had tortiously interfered with plaintiff's employment contract with Cushman (*see id.* ¶¶ 201–206).  Defendants also move to strike plaintiff's demand for a jury trial.

**III.    DISCUSSION**

**A.     Motion to Dismiss**

*1.     Claim that Podell Breached Contract with Price*

Defendants have moved to dismiss plaintiff's tenth claim, which is that Ms. Podell breached a commission-sharing contract she had entered into with plaintiff.  To sustain his claim on the pleadings and survive a motion to dismiss this claim, plaintiff must plead facts regarding: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach."  *RIJ Pharm. Corp. v. Ivax Pharms., Inc.*, 322 F. Supp. 2d 406, 412 (S.D.N.Y. 2004).  Under New York law, consideration—the

6

"bargained-for exchange of promises or performance"—is a "necessary ingredient" of an enforceable contract. *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004). "A promise to carry out a preexisting contractual obligation," however, is generally "not sufficient consideration." *Id.* (quotations omitted).

Plaintiff's pleadings adequately support the existence of a bargained-for contract between plaintiff and Ms. Podell. Plaintiff acknowledges that he signed an employment contract with Cushman when he began working as a broker at the firm. (Compl. ¶ 16.) That contract is the subject of plaintiff's third and fourth causes of action against Cushman. (*See id.* ¶¶ 153–159.) But plaintiff also claims that, after a year and a half at the firm, he entered into a separate enforceable contract with Ms. Podell, which plaintiff terms the "Commission Agreement." (*Id.* ¶ 33.) Plaintiff alleges that, under the Commission Agreement, Ms. Podell agreed to split her broker's fee with plaintiff in a ratio of 80 percent to 20 percent for transactions on which they both worked and which Ms. Podell had originated. (*See id.*)

Plaintiff, in his employment contract with Cushman, promised to "accept as his full and only compensation for all his services rendered, the percentages of the commissions and fees collected by C&W on transactions in which Employee has rendered services," under the employment contract's terms. (*See id.* ¶ 17.) Those terms state that "if any commissions or fees are determined to be due" for a transaction on which other Cushman employees worked, "Employee shall abide by and accept C&W's decision with respect to the determination of the amount of and the allocation of Employee's share in the commission or fee." (*See id.* ¶ 18.) Plaintiff also promised to

7

"faithfully devote his full business time and best efforts to aid and assist C&W in the transaction of C&W's business." (Ex. to Compl., Employment Contract ¶ 2.)

These contractual obligations with Cushman might be understood to have already committed the plaintiff to the work he did with Ms. Podell. On this view, all he promised to do in exchange for Ms. Podell's promise was to carry out a preexisting contractual obligation that could not operate as consideration for the agreement with Ms. Podell. Nevertheless, one plausible inference that may be drawn from the complaint is that Cushman brokers, while obligated generally to perform services for their employer, were also entitled to strike bargains among themselves, choosing to work with some while declining to work with others. If so, plaintiff's alleged promise to work exclusively with Ms. Podell could constitute a promise, not inconsistent with his employment contract, that provides adequate consideration for an alleged contract obligating Ms. Podell to agree to give 20 percent of her broker's fee to plaintiff for deals done together. Because that is a plausible inference from the complaint, the Court finds that the complaint sufficiently alleges the existence of a contract. Plaintiff's tenth cause of action will survive.[1]

### 2. Claims that Cushman and Podell Breached Implied Covenants of Good Faith and Fair Dealing

Defendants have moved to dismiss plaintiff's fifth and eleventh claims against Cushman and Podell, respectively, for breach of defendants' duty of good faith and fair dealing. It is well-settled under New York law that every contract contains an implied

---

[1] Defendants argue that because the employment contract plaintiff signed with Cushman specifically governs all terms of his compensation, it would have been inconsistent with that contract for plaintiff to have struck a separately enforceable deal with Ms. Podell, a co-employee, that required Cushman to compensate plaintiff under different compensation terms. (*See* Defs.' Mem. 16–18.) This argument appears flawed, as it would not necessarily be inconsistent with plaintiff's contract with Cushman for Ms. Podell and plaintiff to agree to submit revenue transmittal documents reflecting a particular fee-splitting arrangement—even if Cushman was to have the final say on the appropriate split.

covenant of good faith and fair dealing.  *See, e.g.*, *Verzani v. Costco Wholesale Corp.*, 2009 WL 2337927, at *7 (S.D.N.Y. July 29, 2009); *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991).  But because "[b]reach of this duty is merely a breach of the underlying contract," *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992), complaints that raise both claims are generally "redundant."  *ARI and Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003).  A breach of the implied covenant of good faith can survive a motion to dismiss "only if it is based on allegations different than those underlying the accompanying breach of contract claim."  *Siradas v. Chase Lincoln First Bank, N.A.*, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999).  Under this standard, neither of plaintiff's claims for breach of the implied covenant of good faith can survive defendants' motion.

    Plaintiff accuses Cushman of violating the covenant of good faith implied by the Employment Contract by "its failure to permit Price to make effective use of the Dispute Resolution Procedures of the Employment Contract."  (*See* Compl. ¶ 162.)  That specific allegation is precisely the same one that plaintiff believes caused Cushman to breach the Employment Contract itself.  Because it is redundant, the fifth claim cannot form the basis for a claim under Cushman's implied covenant of good faith and is dismissed.

    Plaintiff also claims that Ms. Podell, "by her actions and inactions as set forth herein," breached the covenant of good faith implied by her alleged contract with Mr. Price.  (*See* Compl. ¶ 191.)  Plaintiff's claim against Ms. Podell for breach of contract reads likewise.  (*See id.* ¶ 187.)  Plaintiff never suggests that the facts underlying each claim are different in any respect.  The claim that Ms. Podell breached an implied

9

covenant is not "based on a separate set of facts," *ARI and Co.*, 273 F. Supp. 2d at 522, and so the Court finds that plaintiff's eleventh claim must too be dismissed.

### 3. Claims that Cushman and Podell Were Unjustly Enriched

Defendants have moved to dismiss plaintiff's eighth and ninth claims, which are for unjust enrichment and *quantum meruit* against Cushman, and his twelfth claim, which is for unjust enrichment against Ms. Podell. The eighth and ninth claims actually state a single cause of action for unjust enrichment against Cushman. *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (analyzing "*quantum meruit* and unjust enrichment together as a single quasi contract claim," because *quantum meruit* simply describes "one measure of liability for the breach" of a quasi-contract); *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) ("Counts One and Three for *quantum meruit* and unjust enrichment were quite properly subsumed by the district court into a single count for restitution").

When it is clear from the face of a complaint that an express contract exists that "clearly controls," courts dismiss the quasi-contract claims in the alternative for unjust enrichment. *Newman & Schwartz*, 102 F.3d at 663; *see Comprehensive Habilitation Services, Inc. v. Commerce Funding Corp.*, 2009 WL 935665, at *14 (S.D.N.Y. April 7, 2009) ("The undisputed existence of a valid, controlling contract . . . bars a claim for unjust enrichment."). When a controlling contract is not self-evident from the complaint, however, courts allow plaintiffs to sue both on a contract and on an unjust enrichment claim that presumes the contract's non-existence. *See MacPhee v. Verizon Commc'ns Inc.*, 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15, 2008) (denying motion to dismiss

10

plaintiff's claim for unjust enrichment as an alternative to claims based on a disputed agreement).

Whether plaintiff's claims for unjust enrichment can survive, then, depends on whether it is clear from his complaint that a contract clearly exists and clearly controls. Viewed in this light, plaintiff's claim against Cushman for unjust enrichment must be dismissed. It is pled in the alternative to plaintiff's claim against Cushman for breaching an undisputed contract whose terms, however they are interpreted, clearly control. Those terms set out the compensation terms governing Cushman and plaintiff's relationship (*see* Compl. ¶¶ 17–21) and the dispute resolution procedures to which both parties agreed to submit in the event of a dispute (*see* Compl. ¶¶ 22–24). Plaintiff and Cushman agree that they are bound by these contract terms; they only dispute whether Cushman violated the terms. Plaintiff's eight and ninth claims are dismissed.

Plaintiff's claim against Ms. Podell is different; it is pled as an alternative claim to plaintiff's claim against Ms. Podell for breach of a contract whose existence the parties dispute. Given that the existence of a controlling contract between plaintiff and Ms. Podell is not clear from the face of the complaint, plaintiff may maintain his twelfth claim if his pleadings allege sufficient facts to sustain the claim against defendant's motion.

To prevail on an unjust enrichment claim under New York law, "a plaintiff must establish 1) that the defendant benefited; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citations omitted). Plaintiff has adequately pled that Ms. Podell benefited at his expense. It is a reasonable inference from the Complaint's allegations that Ms. Podell received more commission compensation than she would have received had plaintiff been

11

paid the compensation he claims he was due.  These allegations are also sufficient at this stage of the proceedings to support a claim that equity and good conscience require that the Court grant him relief.  Accordingly, the Court denies defendants' motion to dismiss plaintiff's twelfth claim.

> 4.    *Claim that Podell Committed Tortious Interference*

Defendants have moved to dismiss plaintiff's thirteenth claim against Ms. Podell for tortious interference with his contract with Cushman.  Under New York law, plaintiff's claim requires him to show: "(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."  *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (internal citations omitted). Plaintiff has adequately pled facts to support the first, second, and fourth elements of the test, but defendants argue that plaintiff has pled only conclusory allegations in support of the third.

The third element of tortious interference requires that a "third party intentionally and improperly procure[] breach."  *Id.*  The element raises two questions: first, whether Ms. Podell is a "third party" within the meaning of that element, and second, whether Ms. Podell by her conduct intentionally caused Cushman to breach his contract.  A plaintiff may show that a co-employee is a "third party" under the test by showing that the co-employee "acted outside the scope of [her] authority."  *Id.* at 275.  An employee is deemed to have acted outside the scope of her authority when the manner of interference involves "independent tortious acts such as fraud or misrepresentations" or when the employee "act[s] purely from malice or self-interest."  *Id.* (quoting *Cohen v. Davis*, 926

12

F. Supp. 399, 403 (S.D.N.Y. 1996). As defendants note, at least one court in this District has said that discriminatory animus falls outside the "independent tortious acts" category. *See Baguer v. Spanish Broadcasting Sys., Inc.*, 2007 WL 2780390, at *3-*4 (Sept. 20, 2007) (discrimination does not violate a duty owed in tort). Nevertheless, setting to one side Ms. Podell's discriminatory animus, plaintiff has adequately alleged that Ms. Podell misrepresented plaintiff's work on a revenue transmittal report, and that the misrepresentation was in Ms. Podell's own self-interest because she stood to profit from a report that overstated her commission fees.

Plaintiff, however, has not adequately pled that Ms. Podell intentionally caused Cushman to breach its contract with plaintiff. It may be argued that Ms. Podell's actions were tortious, and that they resulted in Cushman allocating the wrong commission fee to plaintiff. But plaintiff's breach-of-contract allegations against Cushman are that Cushman retaliated against plaintiff for reporting discriminatory conduct (*see* Compl. ¶¶ 154–155) and that Cushman failed to follow the dispute resolution procedures its contract with plaintiff required (*see id.* ¶ 158)—not that Cushman breached its contract by failing to compensate him appropriately. And plaintiff has alleged no facts, beyond conclusory statements, that indicate Ms. Podell was responsible for Cushman's alleged retaliation or its alleged failure to follow the required procedures. As a result, the Court must dismiss plaintiff's claim for tortious interference against Ms. Podell.

**B.     Motion to Strike Plaintiff's Demand for Jury Trial**

The Seventh Amendment preserves the right to a jury trial for common-law actions, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989), but parties to a contract may waive that right "by prior written agreement entered into knowingly and

voluntarily." *Morgan Guar. Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999). Nevertheless, because the right is "fundamental," the presumption is against waiver, and courts construe contract waiver provisions "narrowly." *Id.* Whether waiver is knowing and voluntary is determined as a matter of federal law. *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). Courts must use the following factors in deciding whether a waiver is enforceable: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." *Id.*; *see Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 911 (S.D.N.Y. 1995).

Plaintiff and defendants disagree about how the factors should be applied in this case. They also dispute whether Ms. Podell, a non-signatory to the contract between plaintiff and Cushman, should be allowed to enforce the jury waiver clause that contract contains. The Second Circuit has not squarely addressed that question, although other courts have staked out various positions on similar issues. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 225 (3d Cir. 2007) (non-signatory agent of a corporate signatory to a contract could still enforce that contract's jury waiver clause); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996) (contractual jury waiver provision could not be invoked by a non-party); *Adelphia Recovery Trust v. Bank of America, N.A.*, 2009 WL 2031855, at \*5–\*7 (S.D.N.Y. July 8, 2009) (cautioning against application of state law contract principles in view of the doctrine that jury waivers are to be narrowly construed).

Plaintiff also argues that it would be premature to strike its jury request at this time, without discovery complete. The Court agrees. Discovery may well yield additional evidence that will inform whether plaintiff knowingly and voluntarily waived his right to a jury trial. Defendants' motion to strike is denied, with leave to renew that motion at the close of discovery.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motion to dismiss [10] plaintiff's fifth claim, which alleges that Cushman breached its implied covenant of good faith and fair dealing; his eighth and ninth claims, which together allege that Cushman was unjustly enriched; his eleventh claim, which alleges that Ms. Podell breached her implied covenant of good faith and fair dealing; and his thirteenth claim, which alleges that Ms. Podell tortiously interfered with plaintiff's employment contract. The Court denies defendants' motion to dismiss plaintiff's tenth claim, which alleges that Ms. Podell breached a contract with plaintiff, and his twelfth claim, which alleges that Ms. Podell was unjustly enriched. Defendants' motion to strike plaintiff's demand for a jury trial is denied but may be renewed at the close of discovery.

SO ORDERED.

Dated: New York, New York
September 26, 2009

Richard J. Holwell
United States District Judge